Sean M. Lynch (Bar No. 292508)
sean@smcarthurlaw.com
The McArthur Law Firm
4470 W Sunset Blvd #90096
Los Angeles, CA 90027
Telephone: (949) 829-2186
Facsimile: (855) 420-7032
Attorneys for Plaintiff
HENRY MELENDEZ

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| HENRY MELENDEZ<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANTHONY VAIANA<br><br>　　　　Defendant. | Case No. 5:16-cv-02516<br><br>**Plaintiff's Second Application for Default Judgment Against Defendant Anthony Vaiana**<br><br>Proposed Judgment concurrently filed |

　　　　Plaintiff Henry Melendez hereby applies for an order of default judgment against Defendant Anthony Vaiana, pursuant to Federal Rule of Civil Procedure 55(b)(2).

　　　　Defendant Vaiana has been served with the Complaint and is aware of this action, but has not appeared in this action. On March 6, 2017, the Clerk entered default against him. Dkt. No. 14 ("Default by Clerk"). On April 18, 2017, Plaintiff's First Application for Default Judgment was denied without prejudice pending Plaintiff's successful copyright registration. Plaintiff's successful copyright registration, reg. no. PA0002040505, now has an effective date of November 30, 2016, and this Second Application for Default Judgment is hereby submitted.

**Plaintiff Henry Melendez requests a monetary award in the sum of $170,605.00, constituting**:

    a) Statutory damages in the maximum allowable amount ($150,000), enhanced for willfulness under 17 U.S.C. § 504.

    b) Defendant's unjust profits attributable to abuse of the DMCA Counter Notification process ($9,900) under 17 U.S.C. §512(f).

    c) Attorneys' fees totaling $10,000; and

    d) Costs of suit totaling $705.

Entry of default judgment is appropriate in this case because: (1) Plaintiff has satisfied the procedural requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1, (2) Plaintiff would suffer prejudice if default judgment is not entered because he would be denied the right to judicial resolution of his claims, (3) the Complaint's factual allegations establish that Defendant is liable for copyright infringement and violations of the DMCA, (4) the monetary award sought by Plaintiff is factually and legally supported and is reasonable, (5) there is no possibility of dispute regarding the material facts of the case, and (6) Defendant's default did not result from excusable neglect.

Defendant is not a minor, incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. Lynch Decl., ¶15.

This Application is based on the attached memorandum of points and authorities, the declarations of Sean Lynch and Henry Melendez in support and exhibits thereto, and the pleadings, files and other materials that are on file with the Court or may be presented at the hearing.

**Table of Contents**

I.   Introduction ................................................................................................... 5

II.  Statement of Facts ......................................................................................... 6

III. Plaintiff's Service of the Summons and Complaint Was Effective No Later Than January 12, 2017, and Defendant Did Not Respond Within the 21 Days Required ........................................................................................................ 7

   A.  New York Service ................................................................................... 8

   B.  California Service ................................................................................... 8

   C.  Many Attempts to Contact Vaiana Went Ignored .................................. 9

IV. Plaintiff Is Entitled to His Requested Relief ............................................... 10

   A.  Plaintiff Has Satisfied the Procedural Requirements for Entry of Default Judgment Against Defendant ....................................................................... 11

   B.  The Allegations of the Amended Complaint, Taken as True, Establish Liability on Each of Plaintiff's Claim ........................................................ 12

   C.  The *Eitel* Factors Warrant Entry of Default Judgment ........................ 13

V.  Plaintiff's Requested Relief Is Appropriate ................................................ 16

   A.  Plaintiff Is Entitled to $150,000 In Statutory Damages for Defendant's Willful Copyright Infringement ................................................................. 16

   B.  Plaintiff Is Entitled to $9,900 in Lost Profits for Defendant's Abuse of the DMCA Counter Notification Procedure ................................................... 16

   C.  Plaintiff Is Entitled to Reasonable Attorneys' Fees and Costs ............. 17

VI. Conclusion ................................................................................................... 17

# TABLE OF AUTHORITIES

**Federal Cases**

*Automattic Inc. v. Steiner*, 82 F.Supp.3d 1011, 1032-33 (E.D. Cal. 2015) ............ 17

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); .................. 10, 13, 14, 15

*Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005) ................................................................................................ 11, 13, 14

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) .................... 17

*Meadows v. Dom. Rep.*, 817 F.2d 517, 521 (9th Cir. 1987) .................................. 15

*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) ....... 10, 13, 14

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ....... 11, 12

*Visoneering Constr. v. U.S. Fidelity & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981). 11

*Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1013 (C.D. Cal. 2014) ..................... 15

*Warner Bros. Entertainment Inc. v. Caridi*, 346 F. Supp.2d 1068, 1073 (C.D. Cal. 2004) ................................................................................................................ 15

*Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071-73 (C.D. Cal. 2004) ................................................................................................................ 10

**Statutes**

17 U.S.C. § 106(5) ................................................................................................. 12

17 U.S.C. §101 ....................................................................................................... 13

17 U.S.C. §504(c)(1) .............................................................................................. 16

17 U.S.C. §504(c)(2) .............................................................................................. 16

17 U.S.C. §512(f) ................................................................................. 12, 13, 16, 17

50 App. U.S.C. § 521 ............................................................................................. 11

California Code of Civil Procedure 415.20 ............................................................. 8

Fed. R. Civ. P. 4 .................................................................................................. 7, 8

FED. R. CIV. P. 55(b)(2) ................................................................................... 10, 11

New York Civil Practice Law and Rules §308 ................................................... 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   Introduction

Plaintiff Henry Melendez is an independent content creator whose income depends on companies and individuals paying him licensing fees for his intellectual property. He depends on sites like YouTube to distribute his work and compensate him. In the typical course of content creation and dissemination, Melendez will create a video and upload it to YouTube where anyone can watch it. Melendez then receives payment based on the number of views the video receives. When someone else uploads a nearly identical video to their own YouTube channel, they steal not only the views that would otherwise be directed to Melendez's video, but also the ad revenue that accompanies the views.

That's exactly how Defendant Anthony Vaiana stole from Melendez. On September 27, 2016, Melendez uploaded to YouTube a video he created entitled "Enemies of Freedom." Vaiana downloaded the video, trimmed 10 seconds from it, and uploaded it to his own YouTube channel where it received roughly 8,000,000 views and rewarded Vaiana with advertising profits. After Melendez had the infringing video taken down from Vaiana's YouTube channel via YouTube's DMCA takedown procedure, Vaiana initiated a DMCA counter notification. He claimed, falsely and under penalty of perjury, that he had a "good faith belief [that 'Enemies of Freedom'] was removed" from his channel "due to a mistake or misidentification." That lie allowed Vaiana to have the infringing video reinstated so that he could continue to profit from it.

Melendez now seeks statutory damages for copyright infringement, lost profits stemming from Vaiana's abuse of the DMCA counter notification system, and reasonable attorneys' fees and costs.

## II. Statement of Facts

Plaintiff Henry Melendez first published his video entitled "Enemies of Freedom" (the Video) to his YouTube channel on September 27, 2016. Melendez is the exclusive author and owner of the copyrights to the Video. Melendez successfully registered the copyright in the video, which has been accorded registration number PA0002040505 and an effective date of November 30, 2016. Lynch Decl., ¶ 5. Defendant Anthony Vaiana saw this as an opportunity to generate profit for himself without putting in the effort to create his own original content. On November 12, 2016, Vaiana infringed Melendez's copyright when he uploaded substantially all the Video (1 minute and 30 seconds of the total 1 minute and 40-second-long video) to his own YouTube channel, "Anonymous Official." https://www.youtube.com/user/AnonymousWorldvoce. The infringing upload garnered roughly 8 million views on YouTube rewarding Vaiana's illegal actions with unlawful profit. Melendez Decl., ¶¶5-6.

Vaiana knew the video was not his own work to distribute for profit. Vaiana admitted in an email to Melendez that at the time the infringing video was uploaded to Vaiana's YouTube channel, it included a description that gave Melendez credit as the video's creator. Melendez Decl., ¶6.

Melendez generates between $1.50 and $3.00 per 1000 views on his most popular videos. Melendez Decl., ¶4. Using $2.25 as the average, Melendez would have generated $18,000 in revenue. According to Melendez's contract with YouTube, he receives 55% of revenue as profit. Melendez Decl., ¶4. Thus, the Video, which received roughly 8 million views, would have generated approximately $9,900 in profit for Melendez. Melendez Decl., ¶5.

When he learned of Vaiana's infringing video, Melendez initiated a DMCA takedown request and attempted to negotiate with Vaiana. Negotiations were fruitless, and Vaiana refused to take the video down voluntarily. Although YouTube

complied with Melendez's takedown request, Vaiana fraudulently filed a DMCA counter notice resulting in YouTube's reinstatement of the infringing video. Melendez Decl., ¶¶6-7.

After negotiations broke down, Melendez retained counsel, and within three months of the date of first publication he filed to register his copyright in the Video. With nowhere left to turn, Melendez now looks to the legal system to enforce his rights to profits generated by his hard work and efforts to create original video content.

### III. Plaintiff's Service of the Summons and Complaint Was Effective No Later Than January 12, 2017, and Defendant Did Not Respond Within the 21 Days Required

All reasonable efforts have been expended to serve the Summons and Complaint on Defendant Vaiana, but he has rebuffed them all. A process server tried three times to serve the Complaint at the address Vaiana stated, under penalty of perjury, was his own.

Rule 4 of the Federal Rules of Civil Procedure permits a defendant to be served by "following state law for serving a summons … where the district court is located or where service is made." Service of the Complaint was proper and effective under both New York and California law. Under New York law, service was completed January 12, 2017. Under California law, service was completed January 6, 2017. Vaiana did not respond within the time required following either method of service.

And, while not required by the Federal Rules, a copy of the Complaint was also sent to Vaiana's email—an email address that he stated under penalty of perjury belonged to him, and one that he had responded from just days before the

Complaint and Summons were sent. He was also sent several follow-up emails reminding him of the upcoming deadline to respond to the Complaint. Vaiana did not respond to these emails. More importantly, he did not respond to the Complaint in this action in the time required.

### A. New York Service

According to the DMCA counter notification he filed, Defendant Anthony Vaiana lives in Buffalo, New York. Lynch Decl., ¶17. Pursuant to FED. R. CIV. P. 4, service was effected per New York Civil Practice Law and Rules §308, which defines the procedure for substituted service in that state: service is complete 10 days after proof of service is filed.

Proof of service was filed on January 2, 2017. Dkt. No. 8. New York Civil Practice Law and Rules § 308 states that service is complete 10 days after proof of service is filed, so service was complete as of January 12, 2017, giving Vaiana until February 2, 2017 (21 days after January 12) to answer or otherwise respond to the Complaint. Dkt. No. 1.

### B. California Service

Service was also mailed by prepaid First Class mail on December 27, 2017. California Code of Civil Procedure 415.20 states that service is complete 10 days after mailing a copy of the service to the place where a copy of the summons and complaint were left, so according to California law, service was completed January 6, 2017 giving the Defendant until January 27, 2017 (21 days after January 6) to answer.

### C. Many Attempts to Contact Vaiana Went Ignored

Vaiana wrote under penalty of perjury that his address was 56 Baker Ct., Buffalo, NY 14218 when he initiated a fraudulent DMCA counter notification against Melendez's DMCA takedown request. Substituted service was completed according to New York Civil Practice Law and Rules § 308 at that address as shown by the proof of service on file with this Court. Dkt No. 8.

On December 6 and 7, 2016, counsel for Melendez emailed Defendant Anthony Vaiana a copy of the Complaint (Dkt No. 1) along with a demand letter. The letter requested Vaiana contact Melendez's counsel to initiate settlement discussions. The letter gave Defendant Anthony Vaiana until December 14, 2016 to contact Melendez's counsel. Vaiana ignored these correspondences. Lynch Decl., ¶¶3 and 6-8.

On December 17, 2016, counsel for Melendez emailed Vaiana to remind him that his deadline had passed and that, as a courtesy, his deadline to respond would be extended to December 19, 2016. Vaiana ignored this correspondence. Lynch Decl., ¶9.

When Vaiana again ignored attempts to initiate settlement discussions, Melendez proceeded to serve the complaint. Lynch Decl., ¶10.

On December 28, counsel for Melendez emailed Vaiana to confirm that process had been served on December 24, 2016. Counsel reminded Vaiana that he had 21 days upon completion of service to file an answer to the complaint. Vaiana ignored this correspondence. Lynch Decl., ¶11.

On January 9, 2017, counsel for Melendez again emailed Vaiana to remind him of an upcoming deadline to meet and confer prior to filing a motion to dismiss for lack of jurisdiction, improper venue, insufficiency of process and/or insufficiency of service. Vaiana ignored this correspondence. Lynch Decl., ¶12.

Defendant Anthony Vaiana has failed to serve, file a pleading, or otherwise respond to the Complaint. The applicable time limit for responding to the Complaint expired, and on March 6, 2017 the Clerk entered default. Dkt No. 14. The time to plead or otherwise respond to the complaint was not extended by any agreement of the parties or any order of the Court.

### IV.  Plaintiff Is Entitled to His Requested Relief

In addition to the applicable procedural requirements, *see* Local Rule 55-1 and FED. R. CIV. P. 55(b)(2), a court's decision to grant default judgment is guided by the following factors (known as the *Eitel* factors):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071-73 (C.D. Cal. 2004) (granting default judgment based on *Eitel* factors). While the decision to grant a default judgment is left to the sound discretion of the Court, "default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

In determining whether to grant a default judgment, "[t]he general rule of law [is] that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). *See also Visoneering Constr. v. U.S. Fidelity & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981) ("Well pleaded allegations of the petition . . . are taken as admitted on a default judgment.").

In determining damages, the Court may rely on declarations submitted by the plaintiff. *See* FED. R. CIV. P. 55(b)(2). The district court has wide latitude and discretion in determining the amount of damages to award upon default judgment. *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

### A.   Plaintiff Has Satisfied the Procedural Requirements for Entry of Default Judgment Against Defendant

The requirements of FED. R. CIV. P. 55 and Local Rule 55-1 have been met. On December 24, 2016, Plaintiff Henry Melendez served the summons and Complaint on Defendant Anthony Vaiana. According to New York Civil Practice Law and Rules § 308, service was complete as of January 12, 2017 (10 days after the proof of service was filed on January 2, 2017), which gave Vaiana until February 2, 2017 (21 days after January 12) to answer or otherwise respond to the Complaint. Vaiana never answered or otherwise responded to the Complaint.

On March 6, 2017, the Clerk entered Vaiana's default as to the Complaint. Dkt No. 14. Defendant is not an infant or incompetent. *See* L.R. 55-1(c). The Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply. *Id*. *See* L.R. 55-1(d). And Melendez was not required to notify Defendants of this Application for Default Judgment according to FED. R. CIV. P. 55(b)(2) because Defendant has

not appeared in this action either personally or by representative. Lynch Decl., ¶14. *See* L.R. 55-1(e); FED. R. CIV. P. 55(b)(2).

### B. The Allegations of the Amended Complaint, Taken as True, Establish Liability on Each of Plaintiff's Claim

After the entry of default, the factual allegations of the Complaint are taken as true. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18 . The Complaint pleads facts sufficient, as a matter of law, to establish that Vaiana is liable for copyright infringement and abuse of the DMCA's counter notification procedure.

**Copyright Infringement.** As the owner of copyright in the Video, Melendez possesses exclusive rights to the Video, including the right to display the Video publicly. 17 U.S.C. § 106(5). Defendant Anthony Vaiana violated this exclusive right when he re-uploaded substantially all the Video to his own YouTube channel and profited from its popularity by collecting a share of advertising revenue. The infringing video garnered over 8 million views on YouTube rewarding Vaiana's illegal actions with unlawful profit. Melendez Decl., ¶5-6.

**Abuse of DMCA.** When Melendez initiated a DMCA takedown to have the infringing video removed from Vaiana's YouTube channel, Vaiana abused the DMCA counter notification system in violation of 17 U.S.C. §512(f).

Vaiana knowingly and materially misrepresented that the Video was taken down from his YouTube channel by mistake or misidentification. Vaiana admitted in an email to Melendez that at the time the infringing video was uploaded to Vaiana's YouTube channel, it included a description that gave Melendez credit as the video's creator. Melendez Decl., ¶6.

Despite knowing that his actions constituted copyright infringement, after a DMCA takedown request by Melendez had the infringing video taken down from

Vaiana's YouTube channel, Vaiana threatened to misuse the DMCA counter notification process, stating in an email to Melendez "I can assure you we can get the video reinstated by YouTube support within 3 weeks." Melendez Decl., ¶7. On November 18, 2016, Vaiana followed through and fraudulently initiated a counter notification through YouTube to have the infringing video reinstated so he could continue to profit from it.

On December 5, 2016, the counter notification period ended, and the infringing video was reinstated where it continued to generate profit for Vaiana. When Melendez served the summons and Complaint in this action, Vaiana quickly took the video down.

### C. The *Eitel* Factors Warrant Entry of Default Judgment

***(1) Possibility of Prejudice.*** The first *Eitel* factor considers whether Melendez will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Prejudice exists where, absent entry of a default judgment, the plaintiff would lose the right to a judicial resolution of its claims and would be without other recourse of recovery. *See Elektra*, 226 F.R.D. at 392. Without a default judgment, Melendez will be deprived of the right to judicial resolution of his claims for copyright infringement and abuse of the DMCA, and Vaiana will have profited from his illegal conduct.

***(2) Merits of Claims and (3) Sufficiency of Complaint.*** The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal citations omitted). Melendez's complaint (Dkt No. 1) sufficiently states numerous claims for relief based on both 17 U.S.C. §101 et seq. and 17 U.S.C. §512(f).

**(4) Amount at Stake.** Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [Defendants'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, Vaiana willfully infringed Melendez's copyright. Because Melendez registered the copyright within three months of first publication, and Vaiana infringed Melendez's copyright knowing full well that the Video was created by, and belonged to, Melendez, Vaiana is subject to statutory damages that are enhanced for willfulness. Moreover, Vaiana's abuse of the DMCA counter notification system makes him accountable for damages stemming from lost profit along with reasonable attorneys' fees and costs.

Melendez asks for the statutory maximum for copyright infringement, and, given Vaiana's flip attitude when Melendez approached him to engage in settlement negotiations, the statutory maximum is wholly reasonable. Moreover, damages stemming from lost profits that Melendez requests for abuse of the DMCA are based on the average dollars per thousand views that Melendez receives on his YouTube channel, rather than the maximum.

Finally, attorneys' fees and costs are reasonable considering the amount of work required to bring the case through the filing of a motion for default judgment. All Melendez's requests for damages are reasonable given the circumstances of this case.

**(5) Possibility of Dispute Regarding Material Facts.** The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a material fact. *Eitel*, 782 F.2d at 1471-72. All allegations in a well-pleased complaint are taken as true after the court clerk enters a default. Since the Clerk in this case entered a default, there is no likelihood that any genuine issue of material fact exists. *Elektra*, 226 F.R.D. at 393.

**(6) Possibility of Excusable Neglect.** Under the sixth *Eitel* factor, the Court considers whether Defendant's default resulted from excusable neglect. *Eitel*, 782

F.2d at 1471-72. Defendant failed to answer or file a responsive pleading despite repeated notice of this action and his infringing conduct. Lynch Decl., ¶¶3, 6-12, and 12. Defendant's conduct is not excusable. He was served with process, yet never made any attempt to file a responsive pleading nor even to respond to Melendez's counsel's many attempts to communicate with him. Lynch Decl., ¶14. *See Meadows v. Dom. Rep.*, 817 F.2d 517, 521 (9th Cir. 1987) ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer.").

Vaiana did not seek to lift the default or in any way defend against this lawsuit, though he has had ample notice and opportunity to do so. There is no excusable neglect.

**(7) Policy for Deciding Case on the Merits.** The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Warner Bros. Entertainment Inc. v. Caridi*, 346 F. Supp.2d 1068, 1073 (C.D. Cal. 2004). Indeed, when a defendant fails to appear and defend an action, the seventh *Eitel* factor does not preclude the entry of default judgment against him. *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1013 (C.D. Cal. 2014). The only reason this lawsuit cannot proceed to the merits is because Vaiana, after notice, failed to appear and defend this action.

In sum, the balance of *Eitel* factors weigh in Melendez's favor, and the Court should grant this Application and enter default judgment against Defendants.

## V. Plaintiff's Requested Relief Is Appropriate

### A. Plaintiff Is Entitled to $150,000 In Statutory Damages for Defendant's Willful Copyright Infringement

Under 17 U.S.C. §504(c)(1), a plaintiff is entitled to statutory damages of "a sum of not less than $750 or more than $30,000 as the court considers just." Under 17 U.S.C. §504(c)(2), in instances where "the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."

This case, as set forth above, falls squarely within the purview of §504(c)(2): Vaiana willfully infringed on Melendez's copyright. Vaiana knew that the content belonged to Melendez, and Melendez attempted to negotiate a settlement with Vaiana. But Vaiana acted as though he had every right to profit from the infringing video, essentially telling Melendez to take a hike. Vaiana must now be held accountable for his unlawful activities.

### B. Plaintiff Is Entitled to $9,900 in Lost Profits for Defendant's Abuse of the DMCA Counter Notification Procedure

According to 17 U.S.C. §512(f), Vaiana is liable for damages for knowingly and materially misrepresenting that the infringing video subject to Melendez's DMCA takedown request was removed by mistake or misidentification. Damages total $9,900 based on the average dollars per 1000 views that Melendez receives for his other YouTube videos. This takes into account that Melendez receives 55% of the revenue that his videos generate. Melendez Decl., ¶4.

### C. Plaintiff Is Entitled to Reasonable Attorneys' Fees and Costs

17 U.S.C. §512(f) also makes Vaiana liable for costs and attorneys' fees. *See Automattic Inc. v. Steiner*, 82 F.Supp.3d 1011, 1032-33 (E.D. Cal. 2015). According to a *Lodestar* analysis, which is calculated by multiplying the number of hours reasonably expended on the litigation (40 hours) by the reasonable hourly rate ($250/hr), Melendez is entitled to $10,000 in attorneys' fees. Lynch Decl., ¶14; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Alternatively, Melendez is entitled to no less than $6,798.00. *See* L.R. 55-3 (for a default judgment award more than $100,000, attorneys' fees are $5,600 plus 2% of the amount over $100,000). This is based on minimum awardable statutory damages, and foregoes the traditional *Lodestar* analysis. The full costs to Melendez for this lawsuit are $705. Lynch Decl., ¶14.

### VI. Conclusion

For the foregoing reasons, Plaintiff Henry Melendez respectfully requests that the Court enter default judgment and grant him the requested relief.

Dated: July 10, 2017    By: _____
                            Sean M. Lynch
                            The McArthur Law Firm
                            Attorneys for Plaintiff