# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 16-2516 JGB (SPx)** | Date | October 19, 2017 |
|---|---|---|---|
| Title | *Henry Melendez v. Anthony Vaiana* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (1) Order DENYING Plaintiff's Application for Default Judgment (Dkt. No. 18); and (2) DISMISSING Plaintiff's Complaint (IN CHAMBERS)

Before the Court is Plaintiff Henry Melendez's Second Application for Default Judgment against Anthony Vaiana ("Defendant"). (Dkt. No. 18.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering Plaintiff's motion for default judgment, the supporting documents, and Plaintiff's supplemental briefing on personal jurisdiction, the Court DENIES Plaintiff's Application for Default Judgment and DISSMISS Plaintiff's Complaint.

## I. BACKGROUND

Henry Melendez ("Plaintiff") filed a copyright infringement complaint against Defendant on December 6, 2016. ("Complaint," Dkt. No. 1.) The Complaint asserts that Plaintiff, an "independent content creator," published a video entitled "Enemies of Freedom" ("the Video") to his YouTube channel on September 27, 2016. (Compl. at ¶ 16.) Plaintiff "carefully edited and assembled the Video to spur political commentary and generate profit through his YouTube Channel." (Id. at ¶ 18.)

On November 12, 2016, Defendant, who operates a YouTube channel of his own, uploaded the Video—cutting out just ten seconds of it—to his own channel, without permission from Plaintiff. (Id. at ¶ 23.) The next day, Plaintiff initiated a Digital Millennium Copyright Act ("DMCA") takedown via YouTube, and YouTube took down Defendant's infringing video on

November 16, 2016. (Id. at ¶¶ 25, 26.) Around that time, Plaintiff also exchanged emails with Defendant in which the latter acknowledged that Plaintiff owned the copyright to the Video and offered him "an entirely inadequate sum of money and attribution" in exchange for continued use. (Id. at ¶¶ 27, 28.) Plaintiff did not accept the offered sum. (Id. at ¶ 29.) Defendant then initiated a successful counter notification through YouTube to have the Video reinstated on his channel and ultimately received millions of views on the Video through his channel. (Id. at ¶ 24.) As a result, Plaintiff contends that Defendant has realized unjust profits from his infringement. (Id. at ¶ 40.)

Based on the above, Plaintiff alleges two claims: (1) copyright infringement under 17 U.S.C. §§ 101 et seq.; and (2) violations of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(f). He served a copy of the Summons and Complaint on Defendant at his New York address on December 24, 2016 by leaving documents with a co-tenant; he also effected service by mail by mailing a copy of the documents to Defendant on December 27, 2016. (Dkt. No. 8.) After Defendant failed to file a responsive pleading, Plaintiff filed a request for entry of default against him on February 27, 2017. (Dkt. No. 12). The Clerk of this Court entered default against Defendant on March 6, 2017. (Dkt. No. 14.) Plaintiff subsequently filed his Applications for Default Judgment. (Dkt. No. 9 & "Motion," Dkt. No. 18.) The Court then issued a minute order to show cause explaining the basis for the exercise of personal jurisdiction over Defendant. (Dkt. No. 20.) Plaintiff filed a supplemental brief on September 7, 2017. (Dkt. No. 21.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Local Rule 55-1 requires an application to the Court for default judgment be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and set forth the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55–1.

Whether to enter default judgment is within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)

>   whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 ("Eitel factors"). Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of his damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III.  DISCUSSION

#### A.  Adequacy of Service

Courts must determine the adequacy of service of process on a motion for default judgment. Bank of the West v. RMA Lumber Inc., 2008 WL 2474650, at *2 (N.D.Cal. June 17, 2008). The Proof of Service shows that substituted service was made on Defendant at his address in New York. (Dkt. No. 8.) This was the address Defendant listed when he initiated a DMCA counter notification. (Dkt. No. 18-5.) After attempting to serve Defendant twice, the summons, Complaint, and other related case filings were given to Defendant's co-tenant on December 24, 2016. (Dkt. No. 8.) The Court finds that Plaintiff made proper service on Defendant.

#### B.  Personal Jurisdiction

Plaintiff is a California resident; Defendant is a New York resident. When entry of default judgment is sought, the court has the "affirmative duty" to determine whether it has jurisdiction over the parties. Automattic Inc. v. Steiner, 82 F. Supp. 3d 1011, 1021 (N.D. Cal. 2015) (citing In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). A judgment entered without personal jurisdiction is void. In re Tuli, 172 F.3d at 712. Thus, whether the court has personal jurisdiction over Defendant must be determined first. Plaintiff alleges that Defendant is subject to personal jurisdiction on the basis of Defendant's consent to Twitter's User Agreement.

##### 1.  Consent

Plaintiff proffers evidence that Defendant consented to personal jurisdiction in California when he created a Twitter account, which required agreeing to the Twitter User Agreement. (Mot. at 1.) Plaintiff states that Defendant continued to use Twitter's services after Twitter updated its User Agreement in September 2016, manifesting his ongoing, current assent. (Id. at 2.) Twitter's User Agreement contains a forum-selection clause declaring, "All disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States." (Dkt. No. 21-4.) Plaintiff, asserts that the broad language of Twitter's forum selection clause establishes that Defendant has consented to personal jurisdiction in California for this case.

    Forum selection clauses are presumptively valid. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). In addition, these clauses can apply to a "range of transaction participants, parties and non-parties." Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988). The Ninth Circuit described the type of "affirmative act" that gives rise to a party's consent to personal jurisdiction as "accepting a forum selection clause, submitting a claim, [and] filing an action." S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007). Courts have held that accepting a website's terms of service is sufficient to bind the party to the forum selection clause therein. See Automattic, Inc. v. Steiner, 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015) (holding the defendant's acceptance of the plaintiff website's terms of service that included a forum selection clause sufficient evidence the defendant had consented to jurisdiction in that forum); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (holding the court could properly exercise personal jurisdiction over the defendants based on their consent to the forum selection clause in the plaintiff website's terms of use agreement). Courts have also exercised personal jurisdiction over foreign defendants, because of their DMCA counter notification submissions to YouTube. In Crunchyroll, Inc. v. Pledge, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014), the court considered whether the defendants' counter notifications to YouTube was the type of "affirmative act" that constituted his express consent to the court's jurisdiction. To submit the counter notifications, Defendants had to agree to the provision: "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United Sates, the judicial district in which YouTube is located." Id. The Crunchyroll court found that only the foreign defendant had consented to jurisdiction in which YouTube was located, because "he has an address outside of the United States." Id. Another court, relying on Crunchyroll, found that a foreign defendant had consented to the court's personal jurisdiction by submitting DMCA counter notifications to YouTube. Tecnologias Avanzadas Rd, SRL, v. Riegler, 2017 WL 2772301, at *2 (N.D. Cal. June 1, 2017.)

    Here, Defendant's acceptance of Twitter's User Agreement may be sufficient to constitute Defendant's consent to personal jurisdiction in California for the purposes of a dispute between Defendant and Twitter, but it is not sufficient, without more, to allow the court to exercise personal jurisdiction over Defendant for a cause of action filed by Plaintiff. Plaintiff argues that Twitter's terms of service apply to "all disputes" not just those between Twitter and Defendant, but this is an untenable argument. The courts' ability to exercise personal jurisdiction is constrained by the Due Process Clause, and the personal jurisdiction requirement "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." Ross, 504 F.3d at 1138 (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). Plaintiff attempts to differentiate Crunchyroll because it involved a DMCA counter notification instead of a website's forum selection clause. (Mot. at 1.) The Court finds this distinction unpersuasive. A DMCA counter notification is far more closely linked to the infringing content at issue than a user's agreement upon joining a website. Yet still, the Crunchyroll court refused to exercise jurisdiction over the United States defendants based on their submission of a counter notification. This Court declines to find U.S.-based defendants have automatically consented to the personal jurisdiction of a court included in a website's

terms' forum selection clause for third-party disputes related to the site. To find otherwise could allow a court in any district that the hosting website elects to assert jurisdiction over any U.S. citizen, even when the parties are wholly out-of-state parties. Thus, the Court believes the appropriate limitation of a website's terms' forum selection clause does not permit a court to exercise personal jurisdiction over parties to any third-party dispute involving infringing content on that website. Indeed, in both Automattic and Craigslist, the plaintiffs were the website operators, and the defendants had accepted the sites' terms of service including the forum selection clause. Where the parties are not direct beneficiaries of the forum selection clause, the plaintiff must still be a "transaction participant" to benefit from the clause.

A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident. Karo v. San Diego Symphony Orchestra Ass'n, 762 F.2d 819, 822 (9th Cir. 1985). A beneficiary "need not be named in the contract, [but] he must be a member of a class referred to and identified in it." Id. "It is well settled, however, that [California] Civil Code Section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited . . . by the agreement." Jackson v. American Plaza Corp., 2009 WL 1158829, at *3 (S.D.N.Y. Apr. 29, 2009) (quoting TXU Energy Retail Co. LP v. Agri-Cel, Inc., 2006 WL 2385256, at *6 (N.D. Cal. Aug. 16, 2006). A literal contract interpretation that would result in a benefit to a third party is not enough to entitle that party to demand enforcement; "the contracting parties must have intended to confer a benefit on the third party." Id. (quoting Hilderman v. Enea TekSci, Inc., 551 F. Supp. 2d 1183, 1195 (S.D. Cal. 2008).

Plaintiff contends that he is a third-party beneficiary of the agreement between Twitter and Defendant and may rely on the forum selection clause to properly establish personal jurisdiction over him. (Mot. at 3.) Twitter's Rules state they are to "protect the experience and safety of people who use Twitter" and they prohibit using Twitter for "any unlawful purpose." (Dkt. No. 21-4.) Plaintiff asserts that because he is a copyright holder whose content was distributed via Twitter without permission, and because he is a Twitter user himself, Plaintiff is within both classes that enjoy third-party beneficiary status to the Twitter User Agreement. (Mot. at 4.)

A few cases have addressed who is a third-party beneficiary to website terms of services. Plaintiff relies on Moretti v. Hertz Corp., 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) to support his arguments that he is a third-party beneficiary. In Moretti, the plaintiff reserved a car rental from Hertz and Dollar through the Hotwire website. 2014 WL 1410432 at *1. To complete the reservation, the plaintiff had to accept Hotwire's Terms of Use. Id. Neither Hertz nor Dollar were signatories to the Terms of Use, so Hertz and Dollar moved to transfer venue on the basis that they could enforce the forum selection clause as third-party beneficiaries. Id., at *4. Hotwire's Terms of Use stated the website "offers products, services, advice, merchandise and information through [Providers] on an 'as is,' 'as available' basis." Id. The court found Hertz and Dollar to be in the class of Providers, because the plaintiff had booked his car rental through the website and picked up the car at their location. Id. The Moretti court went on to state that the parties to the contract intended the Terms of Use to bind Hertz and Dollar "by explicitly

stating an expectation of compliance by all parties, including providers." Id. Thus, Hertz and Dollar were third-party beneficiaries with standing to enforce the forum selection clause. Id.

Also instructive, in Joude v. WordPress Foundation, 2014 WL 3107441, at *1 (N.D. Cal. July 3, 2014), the court considered a breach of contract claim against the defendant website Wordpress. The plaintiffs alleged an anonymous Wordpress blogger targeted their family by posting malicious statements and family photos while pretending to be them. Id. Plaintiffs alleged they entered into a contractual relationship with defendant when they agreed to its Terms of Service by accessing and using Wordpress, or alternatively they were third-party beneficiaries of a contract between the defendant and the anonymous blogger. Id., at *4. The court held that the defendant did not breach a contract with the plaintiffs, since its Terms of Service "expressly assert[ed] their discretion to remove content." Id., at *5. The court also found the plaintiffs third-party beneficiary theory lacking, stating, "even if [defendant] committed to remove blogs violating the impersonation rules, [defendant] did not promise to do so for the benefit of those impersonated or Plaintiffs in particular." Id.

A Southern District of New York court analyzed Twitter's Terms of Service in Agence France Presse v. Morel, 769 F. Supp. 2d 295 (S.D.N.Y. 2011.) The plaintiff AFP sought a declaratory judgment that it did not infringe upon defendant Morel's copyrights in certain photographs. Morel, 769 F. Supp. 2d at 295. Morel had uploaded several of his photos on Twitpic and linked his Twitter page to his Twitpic page. Id. at 299. A few minutes later, a Dominican Republic resident copied Morel's photographs onto his own Twitpic page and claimed credit and copyright. Id. Within an hour of Morel's posting, an AFP editor placed a link on his Twitter page to Morel's photographs. Id. Then, AFP listed Morel's photos on an online photo database with the wrong photographer credited, subsequently licensing the photos to numerous third-party new agencies. Id. at 300. The court considered whether AFP could assert third-party beneficiary status to the license agreement between Morel and Twitter as a defense against Morel's copyright infringement claim. Twitter's Terms of Service granted "the right for Twitter to make such Content available to other companies, organizations or individuals who partner with Twitter." Id., at 303. Further, the Terms stated "[w]e encourage and permit broad re-use of Content." Id. The court found that Twitter's Terms required Morel "as promiser to confer certain rights of use on two classes – Twitter's partners and sublicensees." Id. In deciding AFP was not a third-party beneficiary, the court accepted its own characterization that it was a "user[]," and found that Twitter's "ambiguous" language of encouraging and permitting broad re-use of Content did not establish that Morel understood that Twitter had the intent to confer a license on other users. Id.

These cases reveal that even in the internet platform context, a third-party beneficiary must still be expressly contemplated and intended by the contracting parties. In Joude and Morel, being a user was not enough to establish third-party beneficiary status to another user's agreement. Rather, as Moretti demonstrates, third-party beneficiaries are more than just users of the website.

Here, the Court finds Plaintiff's position unlike that of Hertz and Dollar in Moretti. Neither Hertz nor Dollar had signed or agreed to the Hotwire Terms of Use; they were not Hotwire users. Rather, Hertz and Dollar were providers through which Hotwire offered its products and services. Twitter's current disclaimer regarding "Services provided to you on an 'as is' and 'as available' basis" identifies "Twitter Entities" as "Twitter, its parents, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors." (Dkt. No. 21-5 at 8.) Twitter Entities are disclaimed from warranties and conditions as to the Services or Content. These Twitter Entities are similar to Hotwire Providers, specifically referenced in the contract as third-parties. Conversely, Plaintiff characterizes himself as a Twitter "user" and "copyright holder," not even a "partner" or "licensor" of Twitter. His claimed statuses do not include him in any of the identified third parties within the Terms of Service.

Plaintiff's relationship to Twitter is similar to the plaintiff's connection to Wordpress in Joude. Both Plaintiff and the Joude plaintiff alleged a harm from activities of another person on an internet platform. In the same way as Wordpress's Terms, Twitter's Terms state, "We reserve the right to remove Content alleged to be infringing without prior notice, at our sole discretion, and without liability to you." (Dkt. No. 21-5 at 4.) By retaining its discretion, Twitter does not obligate itself to remove infringing content, despite its language prohibiting certain user conduct. As Plaintiff highlights, Twitter only commits to "respond to notices of alleged copyright infringement that comply with applicable law and are properly provided to us." (Id.; Mot. at 4.) These provisions utilize lenient language providing only that Twitter will "respond" to infringement notices or "remove Content . . . at [its] discretion." As in Joude, this is insufficient to establish an intent to benefit third persons.

As the Moretti court determined, Twitter's Terms confer certain rights of use on Twitter's partners and sublicensees. (See Dkt. No. 21-5 at 4-5 (stating "you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense)" and "You agree that this license includes the right for Twitter to . . . make Content submitted to or through the Services available to other companies, organizations or individuals.")) Plaintiff argues that Defendant's agreement with Twitter conferred a benefit on him, as a copyright holder.

Even assuming Plaintiff can establish he would benefit, the ultimate question is whether the third-party beneficiary is an intended or incidental beneficiary. The Court holds Plaintiff was not. Throughout its Terms, Twitter uses broad language to define the agreement. Twitter "reserve[s] the right to . . . (v) protect the rights, property, or safety of Twitter, its users and the public." (Id. at 6.) Twitter "has an evolving set of rules for how ecosystem partners can interact with your Content on the Services." (Id. at 5.) As noted above, Plaintiff is not a Twitter Entity, nor do the Terms obligate Twitter to remove infringing content. There is no evidence to establish that when Defendant joined Twitter in 2014, Plaintiff, an individual living across the country of whom he had no knowledge, was an intended a beneficiary. Jackson, 2009 WL 1158829 at *3 (stating "to determine whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves 'construction of the parties' intent . . . in light of the circumstances under which it was entered"). The Moretti, Joude, and Morel cases evince a

circumscribed perspective on who is a third-party beneficiary to another user's website agreement. The Court finds this principle persuasive. Each Twitter user is not an intended beneficiary of every other Twitter user's agreement. To hold as Plaintiff argues would allow two wholly foreign parties to litigate in the courts of Santa Clara County, California just based upon the fact that they shared or disputed content on Twitter. Twitter may have intended to provide a social platform that connects its users and the public, but each user did not intend to benefit other users when joining. The Court finds that Plaintiff is not a third-party beneficiary to the agreement between Twitter and Defendant, and therefore Plaintiff cannot enforce the forum-selection clause therein.

### 2. Specific Personal Jurisdiction

Under California law, a court in this state may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Code. Civ. P. §410.10. The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). The party seeking to invoke the jurisdiction of the court has the burden of establishing that jurisdiction exists. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984).

Though Plaintiff does not assert the Court may exercise specific personal jurisdiction over Defendant, the Court will consider if Defendant has sufficient minimum contacts in California. Specific jurisdiction is analyzed under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1227-28 (9th Cir. 2011) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Plaintiff bears the burden of satisfying the first two prongs. Id. at 1228. As this is a motion for default judgment, Defendant has submitted no pleadings in the case and cannot present a "compelling case" that the exercise of jurisdiction would be unreasonable. See Id. Thus, if the first two prongs are satisfied, the Court will deem the exercise of jurisdiction reasonable.

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. In causes of action that sound in tort, such as copyright infringement, the purposeful direction analysis is used. Id. The Ninth Circuit applies the "effects test" set out in Calder v. Jones, 465 U.S. 783 (1984) to evaluate purposeful direction. This test requires that

"the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, 647 F.3d 1228 (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). The plaintiff must establish all three of the Calder elements to satisfy the purposeful-direction element. Facebook, Inc. v. Pedersen, 868 F. Supp. 2d 953, 958 (N.D. Cal. 2012).

### i. Intentional Act

An intentional act is an intent to perform an "actual, physical act" rather than an intent to accomplish a "result or consequence of that act." Schwarzenegger, 374 F.3d at 806. Here, Plaintiff alleges that Defendant uploaded substantially all of Plaintiff's video on YouTube without authorization. (Mot. at 6.) This is an intentional act that satisfies the first prong. See, e.g., Pooka Pooka LLC v. Safari Beach Club, 2013 WL 12203872, at *4 (N.D. Cal. Apr. 17, 2013) (finding defendants use of plaintiff's copyrighted materials without authorization an intentional act); DFSB Kollective Co. Ltd. v. Bourne, 897 F. Supp. 2d 871, (N.D. Cal. 2012) (finding the defendant's act of uploading the plaintiff's music, links to the music, advertising to his websites an intentional act).

### ii. Express Aiming

The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." Mavrix Photo, 647 F.3d at 1229. However, the mere fact that a defendant operates a website that can be accessed in the forum state is insufficient. DFSB Kollective, 897 F. Supp. 2d at 880. But, a passive website in conjunction with conduct directly targeting the forum is sufficient. Mavrix Photo, 647 F.3d at 1229 (citing Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." Id. (citations omitted).

Plaintiff alleges that Defendant uploaded Plaintiff's Video, garnering roughly eight million views on YouTube. (Mot. at 6.) However, Plaintiff does not make any allegations regarding the residency of the viewers. Plaintiff also does not suggest that Defendant targeted Californians, nor even Plaintiff himself as a California resident. In fact, Plaintiff makes no allegations as to Defendant's activities aimed at California, except that he sent a DMCA counter notification to YouTube, he consented to Twitter's Terms of Service when he joined, and he uses sites like Facebook to drive views to his YouTube account. (Compl. At 3-4.) Other courts considering whether a defendant's use of California-headquartered internet companies to promote its business found this conduct insufficient to establish the party expressly aimed its activities at California.

In <u>DFSB Kollective</u>, the defendant utilized Facebook, and other California companies' websites, to direct traffic to his websites carrying the infringing works. 897 F. Supp. 2d at 883. The court stated that "while the location of these companies is relevant for lawsuits directly involving the companies, the Court is unpersuaded that the headquarters of these Internet companies establishes that Defendant expressly aimed his infringing activities at the California market." <u>Id.</u> Relying on <u>DFSB Kollective</u>, the <u>Pooka Pooka</u> court similarly found that the defendants' use of Facebook, Twitter, and YouTube to direct users to his websites and to post infringing videos was not enough to establish the defendants' conduct was expressly aimed at California. 2013 WL 12203872 at *5-*6. In this District, a court held that marketing the allegedly infringing jewelry on Facebook and Twitter was inadequate to constitute conduct expressly aimed at California. <u>L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC</u>, 2017 WL 1535084. So too here, Plaintiff's allegations of Defendant's use of YouTube, Twitter, and Facebook are unavailing and insufficient to establish express aiming at California.

The <u>Doe v. Geller</u> court declined to rule on whether the defendant's DMCA takedown notice sent to YouTube was sufficient under the <u>Calder</u> effects test to establish personal jurisdiction in California courts. 533 F. Supp. 2d 996, 1006 (N.D. Cal. 2008). In doing so, the court expressed "its doubts" that the takedown notice was sufficient, but ultimately held that to subject the defendant to personal jurisdiction based on a takedown notice would be unreasonable and violate due process. <u>Id.</u> at 1012. Here, Defendant submitted a counter notification to YouTube after Plaintiff's DMCA takedown notice. This Court finds that the counter notification to YouTube, coupled with Plaintiff's (lack of) allegations regarding Defendant's conduct, is not enough to establish he aimed at California. The DMCA counter notification requires senders to consent to the "jurisdiction of Federal District Court for the judicial district in which the [subscriber's] address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found." 17 U.S.C. 512(g)(3)(D). As Defendant is a New York resident, when he sent the counter notification, he consented to the jurisdiction of a district court in New York, not the jurisdiction in which YouTube is located.

In sum, Defendant's conduct in New York was not expressly aimed at California.

### iii. Harm in the Forum State

To satisfy the third <u>Calder</u> prong, "the brunt of the harm need not be suffered in the forum state," but merely "a jurisdictionally sufficient amount of harm." <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1207 (9th Cir. 2006). "[N]umerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum." <u>Amini Innovation Corp. v. JS Imports, Inc.</u>, 497 F. Supp. 2d 1093, 1105 (C.D. Cal. 2007). Plaintiff makes no allegations that Defendant knew Plaintiff was a California resident when he infringed Plaintiff's copyright. Therefore, there is no evidence Defendant knew the harm was likely to be suffered in California. See <u>Crunchyroll</u>, 2014 WL 1347492 at *10 (finding the third prong was not satisfied for out of

state defendant who uploaded infringing material to YouTube, because Plaintiff did not allege Defendant knew Plaintiff operated in California).

In conclusion, while the intentional act prong is satisfied, Plaintiff cannot establish that Defendant's activities were expressly aimed at this forum, or that Defendant knew his infringing conduct would bear harm in California.  Since the Court has determined that Plaintiff has not satisfied the "purposeful direction" requirement of the minimum contacts test, the Court need not address the remaining minimum contacts factors.  The Court concludes that Defendant is not subject to specific personal jurisdiction in California.

## IV.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Default Judgment. Finding the Court lacks personal jurisdiction over Defendant, the Court DISMISSES Plaintiff's Complaint.

**IT IS SO ORDERED.**              JS-6